```
            UNITED STATES DISTRICT COURT
             MIDDLE DISTRICT OF FLORIDA
                FORT MYERS DIVISION
```

ANTHONY ALFONSO CARTER,

        Petitioner,

v.                                  Case No. 2:19-cv-324-JES-NPM

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS,

        Respondent.
_____

## ORDER OF DISMISSAL

This matter is before the Court on Petitioner Anthony Alfonso Carter's ("Carter's" or "Petitioner's") pro se 28 U.S.C. § 2254 petition for writ of habeas corpus and supporting memorandum. (Docs. 1, 2). Carter, who is incarcerated within the Florida Department of Corrections, challenges his state court conviction for burglary. (Doc. 1 at 1). Respondent opposes Carter's petition and asks the Court to dismiss it as time-barred, or alternatively, for raising only a non-cognizable claim of ineffective assistance of postconviction counsel. (Doc. 18 at 1,6). Although provided an opportunity to do so (Doc. 15), Carter did not file a reply.

Upon careful review of the petition, supporting memorandum, response, and exhibits, the Court concludes that the petition must be dismissed because it was filed outside of the one-year statute of limitation for federal habeas petitions, and Carter is not

entitled to statutory or equitable tolling of the limitation period. The Court further finds that, even if timely, Carter has not stated a cognizable claim for habeas relief. Accordingly, the petition is alternatively denied.

## I.   Background and Procedural History

On April 8, 2010, a jury found Carter guilty of one count of burglary of a dwelling and one count of grand theft. (Doc. 19-2 at 42-43, 263). The facts surrounding the crimes for which Carter was convicted were summarized in his brief on direct appeal as follows:

> Felix Valdez testified during trial that he lived on 555 South Elm Street in Hendry County, Florida on June 22, 2009. On that day when he returned from work around 6:00 p.m. he discovered that his TV was missing. He also discovered on his bed, a cup from Olive Garden and a class ring which he found out belonged to his neighbor, Mr. Aquilar.[1]  He gave them back to his neighbor.
>
> He described the TV as flat screen, twenty-nine inch, and black in color. He indicated that his girlfriend had purchased the TV. He could not testify as to what it cost. They were both paying on it on a payment plan for around $60 or $70 dollars. He indicated that as of that date, April 8, 2010, he was still paying on the TV.
>
> He indicated that he went around the neighborhood to see if anyone had seen anything and met up with a young girl on the corner about 100 yards from his house.

---

[1] The jury acquitted Petitioner of burglarizing Mr. Aguilar's home. (Doc. 19-2 at 42).

> Shurlyn Williams testified that she was fourteen years of age. She indicated that she lives on the same block as Mr. Aguilar. She indicated that she had known Mr. Carter personally for four or five years and is friends with his children. She identified him in court.
>
> Ms. Williams indicated that On June 22, 2009, she saw Mr. Carter around Mr. Valdez's house. She said that she saw Mr. Carter that day going through the window of Mr. Valdez's house and coming out with a black TV which he put in his car and then he left. She indicated that a few minutes later police came and asked her if she had seen anyone going in the house. She indicated that they showed her a photo of Mr. Carter which she circled when she was talking to them.

(Doc. 19-2 at 606-07) (citations to the record omitted and slight alterations made for clarity).[2]

On June 17, 2010, the trial court sentenced Carter as a habitual felony offender (HFO) and prison releasee reoffender (PRR) to concurrent terms of fifteen years in prison on the burglary count and five years in prison on the grand theft count. (Id. at 52-58, 314-17). On February 9, 2011, Carter filed a motion to correct his sentence under Rule 3.800(b) of the Florida Rules of Criminal Procedure. (Id. at 326-28). On April 12, 2011, the trial court granted the motion in part and struck the HFO designation from the burglary conviction and the PRR designation

---

[2] The State accepted Petitioner's statement of facts for purposes of the appeal. (Doc. 19-2 at 617).

from the grand theft conviction. (Id. at 528). Otherwise, the sentence remained the same. (Id.)

Carter filed a direct appeal arguing that the state had not proven the value of the stolen television in the grand theft charge. (Doc. 19-2 at 608). On January 18, 2012, the Second District Court of Appeal ("Second DCA"), reversed Carter's conviction and sentence for grand theft in a written order and remanded to the trial court to reduce his grand theft conviction to petit theft and resentence him accordingly. Carter v. State, 77 So. 3d 849, 852 (Fla. 2d DCA 2012). On June 4, 2012, the trial court resentenced Carter to sixty days in prison on the grand theft conviction. (Doc. 19-2 at 580–83).

On February 25, 2013, Carter filed a motion for postconviction relief under Rule 3.850 of the Florida Rules of Criminal Procedure ("Rule 3.850 motion"). (Doc. 19-2 at 638). He amended the Petition on May 17, 2013 (id. at 716–19) and again on March 13, 2015, this time raising a claim of newly-discovered evidence based on the alleged recantation of trial testimony by witness Shurlyn Williams. (Id. at 716–19). In the second amended petition, Carter's first postconviction counsel, Pavlina Petrova, said that the State's eyewitness, Shurlyn Williams, recanted her identification of Carter as the burglar but subsequently withdrew the recantation and told her that she stood by her initial

4

testimony.  (Id.)  In an attached deposition, Ms. Petrova described her interaction with Ms. Williams as follows:

> On July 5, 2014, I went to Ms. Williams' residence. I knocked on the door. Ms. Williams came outside and closed the door. I introduced myself. I told her that I am appointed to represent Anthony Carter in his 3.850 motion and my understanding of the case is that she was the only witness that has seen Mr. Carter committing the burglary and the theft. I didn't have a chance to tell Ms. Williams more details when she said, "Actually I haven't seen it. They told me." Ms. Williams continued telling me that "they" told her that "they" have seen Mr. Carter burglarize their residence and told Ms. Williams that they will give her money if she tells them where Mr. Carter lives.
>
> At this time, Ms. Williams' boyfriend started yelling from inside the house for Ms. Williams to go inside. Ms. Williams went inside the house while I was still standing at the front door.
>
> Shortly after, Ms. Williams came back outside. We moved across the parking lot. When I asked Ms. Williams who are those, "they" she is talking about, she stated that "they" are the victim Valdez and his in-laws.
>
> However, now she stated to me that she stands behind her prior statements to police, deposition and trial that she has seen Mr. Carter burglarize Mr. Valdez' home.
>
> I asked Ms. Williams if she is afraid that the State would file perjury charges against her. She stated that she is afraid of that because State files charges against people that are lying to the police.

(Doc. 19-2 at 735-36).  The Court appointed a different postconviction attorney, Brian L. Edwards, to handle the new claim

5

and ordered an evidentiary hearing. (Id. at 742). On May 15, 2017, the state court conducted an evidentiary hearing. (Doc. 21-1). However, Carter presented no testimony or evidence at the hearing to support the supplemental ground of newly discovered evidence. Specifically, neither Ms. Petrova nor Ms. Williams testified. (Doc. 21-1; Doc. 19-2 at 744).[3]

On May 23, 2017, the state court denied each of Carter's postconviction claims in a written order. (Doc. 19-2 at 741–47). The trial court denied the claim of newly discovered evidence as follows:

> Finally, ground 5 is denied because Defendant failed to present any testimony or evidence whatsoever in support of the newly discovered evidence allegations in his supplemental motion. While the supplement has an affidavit attached to it from Attorney Petrova, the Court observes that it is based on hearsay and would not have been admissible had Ms. Petrova testified in person at the hearing. More notably, Shurlyn Williams did not testify at the hearing; Defendant failed to prove that she recanted her testimony as alleged.

(Doc. 19-2 at 747). Carter did not timely appeal, but he did seek leave to file a belated appeal. (Id. at 643–49). The Second DCA denied the petition for belated appeal. (Id. at 651).

---

[3] Three weeks after her interaction with Ms. Petrova, Ms. Williams provided a sworn statement insisting that her testimony at trial was true and that she had not stated otherwise to Ms. Petrova. (Doc. 19-2 at 772-83, 778).

On September 29, 2017, Carter filed a successive motion for postconviction relief. (Doc. 19-2 at 672-97). The state court denied both the motion and Carter's motion for rehearing, (Id. at 698-701, 767-68). The Second DCA affirmed without a written opinion on March 15, 2019. (Id. at 906). On April 24, 2019, the Second DCA denied rehearing and mandate issue on June 13, 2019. (Id. at 915, 917).

Carter signed his federal habeas petition on May 7, 2019, and it was docketed in this Court on May 14, 2019. (Doc. 1).

## II.  Legal Standards

### A.  The Antiterrorism Effective Death Penalty Act (AEDPA)

Under the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). In this context, "clearly established federal law" consists of the governing legal principles, and not the dicta, set forth in the decisions of the United States Supreme Court at the time the state court issued its decision. White v. Woodall, 572 U.S. 415, 420 (2014); Carey v. Musladin, 549 U.S. 70,

7

74 (2006) (citing <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000)).

    **B. Statute of limitation**

A one-year period of limitation applies to the filing of a habeas petition by a person in custody pursuant to a state-court judgment. This period runs from the latest of:

    (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

    (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

### III. Discussion

Carter raises one ground for relief in his habeas petition. He asserts that he is actually innocent of his crimes of conviction because:

> The State's eyewitness to the alleged crimes recanted her trial testimony during [a] postconviction deposition with Petitioner's appointed postconviction counsel, stating

>       that she was instructed (told) to testify that
>       she saw Petitioner committing the crime
>       admitting that her trial testimony was
>       perjured.

(Doc. 1 at 4; Doc. 2 at 1). Respondent argues that Carter filed this petition outside the AEDPA's one-year statute of limitation and that he is not entitled to statutory or equitable tolling. (Doc. 18 at 6-14). Respondent also asserts that, to the extent Carter relies on Ms. Williams' recantation of testimony to support a claim of actual innocence, no recantation occurred because when placed under oath three weeks after her exchange with Ms. Petrova, Ms. Williams maintained that both her pre-trial deposition testimony and her trial testimony was truthful. (Id. at 22). Finally, Respondent argues that an attack on a state's postconviction process, such as the one Carter makes here, does not state an independent claim for federal habeas corpus relief. (Id. at 6).

   **A. Carter's habeas petition is untimely under 28 U.S.C. § 2244(d)(1)(A).**

Here, Carter does not allege that the statutory triggers set forth in sections 2244(d)(1)(B)-(D) apply to this case. Therefore, the limitation period is measured from the remaining statutory trigger, which is the date Carter's conviction became final. 28 U.S.C. § 2244(d)(1)(A).[4]

---

[4] Petitioner argues that his petition is timely under section 2244(d)(1)(A). (Doc. 1 at 13). Therefore, he does not argue that

9

Carter's conviction became final on February 17, 2012, the expiration of the 30-day deadline to seek the Supreme Court of Florida's discretionary review of the Second DCA's written opinion on his direct appeal. See Coulliette v. Sec'y, Dep't of Corr., No. 5:12cv355/MW/GRJ, 2014 WL 518936, at *2 (N.D. Fla. Feb.10, 2014) ("Because the First DCA issued a written opinion, Petitioner could have sought discretionary review in the Florida Supreme Court, but he did not do so. Accordingly, Petitioner's conviction became final . . . 30 days after the First DCA denied his motion for rehearing, when the time to seek discretionary review expired."). Carter then had through February 17, 2013 to file his federal habeas petition.

Carter filed his first pro se habeas petition on May 7, 2019. Therefore, it was filed 2270 days late unless tolling principles apply to render it timely.

### B. Carter is not entitled to statutory tolling on his 28 U.S.C. § 2254 petition.

"The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward

---

the Court should examine the applicability of a later trigger date for the statute of limitation under section 2244(d)(1)(D). (Doc. 1 at 13). The Court will not sua sponte consider whether the AEDPA's one-year period to file a habeas petition could start on the date of Ms. Williams' alleged recantation because, as discussed infra, even if timely, Petitioner has not presented a cognizable claim for habeas relief.

any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

Carter did not file a tolling postconviction motion until February 25, 2013, when he filed his first Rule 3.850 Motion. (Doc. 19-2 at 638). However, by that time, his AEDPA limitation period had already expired, and neither the Rule 3.850 motion nor any other subsequently filed postconviction motion had a tolling effect. See Tinker v. Moore, 255 F.3d 1331, 1333 (11th Cir. 2001) (recognizing that a state court petition filed after the expiration of the federal limitations period "cannot toll that period because there is no period remaining to be tolled").

### C. Carter has not demonstrated the applicability of any exception to the AEDPA statute of limitation.

Carter argues that a manifest injustice will occur if this Court does not review his claim of actual innocence and also suggests that the Supreme Court's holding in Martinez v. Ryan, 566 U.S. 1 (2012) excuses any procedural default of his claim. (Doc. 2 at 2-6). The Court construes these arguments as Carter's attempt to offer a gateway claim of actual innocence under McQuiggin v. Perkins, 569 U.S. 383 (2013) and briefly addresses them.

#### 1. The holding in Martinez v. Ryan does not excuse an untimely 28 U.S.C. § 2254 petition.

Carter suggests that, in Martinez v. Ryan, the Supreme Court provided a mechanism for this Court to review his actual innocence claim. (Doc. 2 at 4-5). The Supreme Court's holding in Martinez

11

provides a framework for a federal habeas court to excuse a procedural default of an ineffective assistance of trial counsel claim when the claim was not properly exhausted in state court due to attorney error in an initial-review collateral proceeding. See Martinez, 566 U.S. at 17 ("Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective."); Trevino v. Thaler, 569 U.S. 413 (2013) (expanding the holding in Martinez to states that allow, but do not require, ineffective assistance claims to be raised on direct appeal). However, neither the Martinez nor Trevino courts found, or even suggested, that their holdings could be interpreted as enlarging the AEDPA's statute of limitation.

Here, Carter urges that this Court should excuse the "procedural default" of his habeas claim because his postconviction counsel was ineffective at the postconviction evidentiary hearing. (Doc. 2 at 4-5). But the issue that first forecloses relief on Carter's habeas petition is not one of procedural default—it is one of timeliness. Carter cites no authority suggesting that a district court may expand Martinez to

12

provide for equitable tolling of the AEDPA statute of limitation.[5] Whether a claim was properly exhausted or procedurally defaulted becomes a consideration only after a determination that the petition is not time-barred, a showing that Carter has not made.

### 2. Carter has not demonstrated actual innocence as a gateway to federal habeas review.

The Court also rejects Carter's argument that he is "actually innocent" of burglary, and as a result, he should benefit from the equitable exception to the AEDPA statute of limitation set forth in McQuiggin v. Perkins. (Doc. 2 at 2). In McQuiggin, the Supreme Court held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass," even when the AEDPA time limit has expired. 569 U.S. at 386. The Court cautioned, however, that "tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty

---

[5] Nor would such an argument have merit. The Eleventh Circuit has expressly rejected the argument that Martinez applies in such a manner. See Arthur v. Thomas, 739 F.3d 611, 630 (11th Cir. 2014) ("[T]he Martinez rule explicitly relates to excusing a procedural default of ineffective-trial-counsel claims and does not apply to AEDPA's statute of limitations or the tolling of that period."); Chavez v. Sec'y, Fla. Dep't of Corr., 742 F.3d 940, 945 (11th Cir. 2014) (recognizing that Martinez "has no application to other matters like the one-year statute of limitations period for filing a § 2254 petition" (citing Arthur, 739 F. 3d at 630)).

13

beyond a reasonable doubt.' " Id. (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)).

The "new evidence" now offered by Carter to support his claim of actual innocence is the same as that presented to the state postconviction court in his second amended Rule 3.850 motion: an allegation that postconviction counsel, Ms. Petrova, had a conversation with witness Ms. Williams who said—but then retracted her statement—that she was told by the victim's family to testify as she had at trial. (Doc. 2 at 3). As noted, the state postconviction court rejected this claim, finding that Petitioner had not proven that Ms. Williams actually recanted her testimony as alleged. (Doc. 19-2 at 747).

As recognized by the postconviction court, even had Ms. Petrova testified at the Rule 3.850 hearing about Ms. Williams' alleged recantation, the testimony would have constituted hearsay. (Doc. 19-2 at 747). Moreover, three weeks after her alleged recantation, Ms. Williams stated, under oath, that she did not recant her testimony to the attorney. (Id at 782). She reiterated that both her pretrial deposition and trial testimony were true. (Id. at 778).

On the record before this Court, Carter has not demonstrated "that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." McQuiggin, 569 U.S. at 386. There is simply no sworn recanted

14

testimony to support an actual innocence exception to the AEDPA statute of limitation, and this petition must be dismissed with prejudice as untimely filed.

**D. Carter has not stated a cognizable claim for federal habeas relief.**

Even if the Court liberally construes the petition and supporting memorandum as demonstrating that Carter is entitled to an exception to, or extension of, the one-year statute of limitation, he would still not be entitled to federal habeas corpus relief. In the sole claim of the petition, Carter says that he is actually innocent of the burglary and that Ms. Williams "recanted her trial testimony during [a] postconviction deposition with Petitioner's appointed postconviction counsel." (Doc. 1 at 4).[6] The gravamen of the claim is that postconviction counsel, Mr. Edwards, did not present evidence at the Rule 3.850 hearing to support Carter's actual innocence argument. Carter explains:

> [F]or unexplained reasons, Appointed Postconviction Counsel Brian L. Edwards abandoned Carter's newly discovered evidence ground when he failed to present any argument or evidence [at the Rule 3.850 hearing] to support the recanted trial testimony issue, essentially depriving Carter of a merits resolution based on the credibility of the recanted statements made to prior postconviction counsel, Pavlina Petrova,

---

[6] Notably, although Petitioner claims that Ms. Williams recanted her testimony during a deposition, it is clear that her statement was unsworn and made to Ms. Petrova before any deposition began. (Doc. 19-2 at 735–36).

15

> which would have proved Carter was innocent and did not commit the burglary.

(Doc. 1 at 5). It is unclear from this statement whether Carter raises a freestanding claim of actual innocence or a claim that postconviction counsel was constitutionally ineffective. In either instance, the ground is not cognizable on federal habeas review.

### 1. A freestanding claim of actual innocence cannot support a finding of federal habeas relief.

First, to the extent Carter alleges that he is actually innocent of the charges against him based on Ms. Williams' allegedly recanted testimony, this assertion, standing alone, does not entitle him to federal habeas relief. Specifically, "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." Herrera v. Collins, 506 U.S. 390, 400 (1993). Federal courts do not carry the role "to make an independent determination of petitioner's guilt or innocence based on evidence that has emerged since trial" because the federal court's role in habeas claims is "to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact." Brownlee v. Haley, 306 F.3d 1043, 1065 (11th Cir. 2002).

16

Thus, even had Carter offered sworn testimony showing that Ms. Williams actually recanted her testimony, the mere recantation of testimony is not a ground for federal habeas relief. Brownlee, 306 F.3d at 1065. And even if this petition had been timely filed, any claim based on Carter's actual innocence, without an independent constitutional violation, would be denied.

### 2. Errors in postconviction proceedings do not state a claim for federal habeas corpus relief.

Next, to the extent Carter seeks habeas relief because postconviction counsel did not adequately litigate his actual innocence claim in state court, he fairs no better. Carter complains that Mr. Edwards abandoned this claim by not calling Ms. Petrova or Ms. Williams to testify at the Rule 3.850 evidentiary hearing. (Doc. 1 at 5). However, nothing in Martinez, or any other Supreme Court or Eleventh Circuit case, creates a freestanding claim for challenging a conviction based on the alleged ineffective assistance of postconviction counsel. Indeed, there is no constitutional right to any counsel in a state postconviction proceeding. Pennsylvania v Finley, 481 U.S. 551, 557 (1987) (recognizing that a criminal defendant "has no underlying constitutional right to appointed counsel in state postconviction proceedings"); Davila v. Davis, 137 S. Ct. 2058, 2062 (2017) (same). Therefore, it stands to reason that "a petitioner cannot claim constitutionally ineffective assistance of

17

counsel in such proceedings." Coleman v. Thompson, 501 U.S. 722, 752 (1991); Lambrix v. Sec'y, Fla. Dep't of Corr., 756 F.3d 1246, 1263 (11th Cir. 2014) ("Longstanding U.S. Supreme Court precedent holds that a habeas petitioner cannot assert a viable, freestanding claim for the denial of the effective assistance of state collateral counsel in post-conviction proceedings.").

Therefore, to the extent this claim is based on alleged errors committed by Mr. Edwards in Carter's postconviction proceedings, it does not state a cognizable claim for federal habeas corpus relief. See Quince v. Crosby, 360 F.3d 1259, 1262 (11th Cir. 2004)("[W]hile habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief."). And even if this petition had been timely filed, any claim of ineffective assistance of postconviction counsel would be denied.

### IV. Conclusion

Carter's 28 U.S.C. § 2254 petition is dismissed with prejudice because it was untimely filed. Alternatively, the Court concludes that Carter has not raised a cognizable claim under 28 U.S.C. § 2254.

A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal; instead, he or she must obtain a certificate

18

of appealability ("COA"). 28 U.S.C. § 2253(c)(1); Harbison v. Bell, 556 U.S. 180, 184 (2009).[7] "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004), or, that "the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) (citations omitted). Further, to obtain a certificate of appealability when, as here, dismissal is based on procedural grounds, a petitioner must show, "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

Carter has not made the requisite showing here and is denied a Certificate of Appealability. Because Carter is denied a certificate of appealability, he may not appeal in forma pauperis.

---

[7] Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, requires the "district court [to] issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Id.

Accordingly, it is now **ORDERED**:

1. The petition for writ of habeas corpus filed by Anthony Alfonso Carter is **DISMISSED WITH PREJUDICE** as time-barred. The petition is alternatively denied on the merits because it does not raise a cognizable claim for federal habeas corpus relief.

2. Petitioner is **DENIED** a certificate of appealability.

3. The **Clerk of Court** is directed to terminate any pending motions, enter judgment accordingly, and close this case.

**DONE AND ORDERED** in Fort Myers, Florida on March 24, 2022.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

SA: FTMP-2

Copies furnished to:
Counsel of Record
Unrepresented Parties